**Commonwealth v. Klingel**

C.P. of Monroe County, no. 1672 CR 2010.

*Janet K. Marsh Catina,* for Commonwealth.
*John Paul Klingel,* pro se.

SIBUM, *J.,* January 27, 2011—

## ADJUDICATION

On June 17, 2010, a criminal complaint was filed against John Paul Klingel ("defendant") for disorderly conduct and harassment. A summons was issued on June 18, 2010, and defendant appeared at a preliminary hearing on August 2, 2010. At that time, defendant signed a waiver of counsel, waiving his right to be represented by an attorney, and the charges were held over for court. On September 13, 2010, defendant appeared for arraignment and entered a plea of not guilty. A criminal information was filed on September 9, 2010, charging defendant with one count each of the following crimes: disorderly conduct, 18 Pa.C.S.A. §5503(a)(4) (M3); and Harassment, 18 Pa.C.S.A. §2709(a)(3) (S). At the call of the list on November 3, 2010, defendant was colloquied as to waiver of counsel and waiver of a jury trial. Defendant then

signed and filed both a waiver of counsel and waiver of a jury trial. A non-jury trial was held on December 15, 2010. Prior to the start of the non-jury trial, the parties waived the seven-day time requirement under Pennsylvania Rule of Criminal Procedure §622. The court is now prepared to decide this matter.

## FINDINGS OF FACT

1. On May 25, 2010 at approximately 7:20 p.m., Trooper Norman Strauss, III of the Pennsylvania State Police responded to a call at the Wagner property located at 7092 Rossmor Drive, Saylorsburg, Pennsylvania, regarding an ongoing property line dispute between Mr. and Mrs. Wagner and their adjacent neighbor.

2. Mr. Wagner advised Trooper Strauss that his neighbor had urinated on his fence.

3. Mr. Wagner identified John Paul Klingel ("defendant") as the neighbor.

4. Defendant owns and resides on lot 42 and owns a portion of lot 44 on Rossmor Drive.

5. The Wagners own and reside on lot 43 and the remaining portion of lot 44 on Rossmor Drive. The Wagners' property is located between defendant's lot 42 and his portion of lot 44. The Wagners purchased lot 43 from Terry Lynn Elder.

6. Troopers have responded to this location seven times in the past to address the dispute between the Wagners and defendant. [Affidavit of probable cause, 6/17/10, p.4.] The state police have received approximately 20 calls regarding the property line dispute.

7. In the past, defendant has thrown wire and nails into the Wagners' yard and nails into their driveway. Defendant has also thrown dead fish rolled in newspaper and chicken bones onto the Wagners' property.

8. As a result of defendant's conduct, the Wagners had a survey of their property completed approximately two years ago and erected a fence three feet inside the property line between lot 42 and lot 43. The Wagners also installed a video surveillance camera.

9. The fence runs perpendicular to Rossmor Drive.

10. The Wagners also attached "no trespassing" signs to either end of the 120-foot fence on the side of the fence facing defendant's property.

11. Surveillance video depicts defendant walking onto the Wagners' property and urinating on their side of the fence.

12. Surveillance video also shows defendant walking onto the Wagners' property and hanging the "no trespassing" sign on the Wagners' side of the fence as well as the defendant hitting the fence with his lawn mower.

13. Trooper Strauss interviewed defendant at 7:30 p.m. on May 25, 2010.

14. When questioned whether defendant urinated on the fence, defendant admitted to Trooper Strauss to urinating on the fence three to four times. Defendant stated that he urinated on the Wagners' side of the fence so that he would not be seen doing so.

15. Defendant testified to touching the fence a few times with his lawn mower while maneuvering the mower

to cut the lawn.

16. Defendant also testified to hanging the "no trespassing" sign on the Wagners' fence after it had blown off into his yard.

17. Defendant asserts that he legally owns the Wagners' property, being lot 43 and part of 44. Defendant also asserts that the Wagners have fraudulently come into possession of lot 43 and part of 44.

## DISCUSSION

Defendant has been charged with one count of disorderly conduct and one count of harassment in connection with the above referenced events. We will address each charge independently.

### 1. *Disorderly Conduct*

Defendant is charged with one count of disorderly conduct - harassment or physically offensive condition, a misdemeanor of the third degree, pursuant to 18 Pa.C.S.A. §5503(a)(4). This section provides:

> (a) A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor. 18 Pa.C.S.A. §5503(a)(4).

Disorderly conduct is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. §5503(b).

In the case at hand, the commonwealth bears the burden of proving each material element of the offense beyond a reasonable doubt. *Commonwealth v. Burton*, 445 A.2d 191, 193 (Pa. Super. 1982). First, the commonwealth must prove that defendant caused or intended to cause public inconvenience, annoyance or alarm. The word "public" as defined by the statute means "affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public." §5503(c).

In addition to establishing that defendant's conduct occurred on public property and that the public was likely to be affected as provided in §5503(c), the commonwealth must also prove that defendant had the proper mens rea as mandated in the statute. That is, the commonwealth would need to establish that defendant specifically intended to cause serious public inconvenience or substantial harm to the public, or that defendant persisted in disorderly conduct after a reasonable warning or request to desist was made. §5503(b); *Commonwealth v. Coon*, 695 A.2d 794, 798 (Pa. Super. 1997).

After reviewing the evidence of record, we do not find that defendant caused or intended to cause public inconvenience, annoyance or alarm. Rather, we find that defendant wished to assert a property interest in the Wagners' premises and sought to assert that right as against the Wagners only, albeit in an inappropriate manner.

The evidence in this case reveals that defendant's act of urinating on the fence occurred on the Wagners' private

property. The fence is located between lot 42 and lot 43, approximately three feet from defendant's lot 42 property line. Neither lot 42 nor lot 43 are open to the public, and both defendant and the Wagners' residences are private dwellings, not apartment buildings. Mr. Wagner testified that portions of lot 42 and 43 abut Rossmor Drive and that the fence in question was 120 feet long. However, no evidence was presented indicating how close defendant was to the public road when he urinated on the fence or what other physical features existed between the road and defendant's location at the time of the event. Based upon the video evidence presented at trial, we presume, but are uncertain, that defendant urinated at the end of the fence farthest from the road. If true, he was at least 120 feet from Rossmor Drive at the time of the offense. In addition, we note from the video that there are trees on the Wagners' yard running along the fence line. However, the evidence of record does not establish what, if any trees or other objects existed between the road and defendant when he urinated on the Wagners' fence.

We also note that Trooper Strauss testified that he did not know whether defendant was actually viewed from the roadway, only that he could have been viewed if someone had been in the roadway at the time of the incident. The Trooper did not elaborate as to what part of defendant or from what location on Rossmor Drive the defendant could have been seen while urinating on the Wagners' fence. Applying the statutory definition of "public" to the circumstances and facts of this case, we are constrained to find that defendant's actions did not occur "in a place to which the public or a substantial group has access..." §5503(c). We further find that the incident did not occur

on a highway or in a neighborhood as contemplated by the crimes code. Rather it occurred on private property at least 120 feet from a public road and in an area where, based upon the evidence present, we are unable to determine the extent to which defendant may have been visible from Rossmor Drive.

In addition to finding that defendant did not commit the conduct in question in a public place, we are also constrained to find that defendant did not cause or intend to cause public inconvenience, annoyance or alarm. "A person acts intentionally with respect to a material element of an offense when... it is his conscious object to engage in conduct of that nature or to cause such a result." *Id.* The specific intent requirement of disorderly conduct may be met by a showing of a reckless disregard of the risk of public inconvenience, annoyance, or alarm, even if the [defendant's] intent was to send a message to a certain individual, rather than to cause public inconvenience, annoyance, or alarm. *Commonwealth v. Maerz*, 879 A.2d 1267, 1269 (Pa. Super. 2005). At trial, defendant asserted that the Wagners did not "legally" own lot 43 or any portion of lot 44 and stated that he went around the fence to the Wagners' side to urinate so that he would not be seen from the roadway. Defendant specifically denied that he intended to cause serious public inconvenience or substantial harm to the public. Rather, defendant testified that he was not harming anyone because he believed he was on his own property and that he owned both sides of the fenced area. Finally, defendant acknowledge the lawsuit brought against him in this court by the Wagners' predecessor in title in 1996. We judicially note that in that action, the Honorable Peter J. O'Brien found that Terry

Lynn Elder, not defendant, owned lot 43.

Based upon the testimony presented and the facts judicially noted above, we find that defendant's conduct was a misguided attempt by defendant to annoy the Wagners by asserting his "right" to enter upon their property. We further find that defendant's intention in doing so was to annoy and assert this non-existent right as to the Wagners only, not to inconvenience, annoy or alarm the public. As such, we are constrained to find that the evidence does not establish beyond a reasonable doubt that defendant either intended to or caused a public inconvenience, annoyance or alarm. Having so found, we need not discuss whether defendant's conduct created a hazardous or physically offensive condition or whether his actions served no legitimate purpose as required by statute. In accordance with the above findings, this court concludes that the commonwealth has failed to prove beyond a reasonable doubt that defendant is guilty of disorderly conduct in violation of 18 Pa.C.S.A. §5503(a)(4).

2. *Harassment*

Defendant has also been charged with one count of harassment - course of conduct with no legitimate purpose pursuant to 18 Pa.C.S.A. §2709(a)(3), a summary offense. This section provides:

(a) A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:

(3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose. 18 Pa.C.S.A. §2709(a)(3).

An offense under subsection (a)(3) constitutes a summary offense. §2709(c)(1). Section 2709(a)(3) first requires the fact finder to infer a specific intent to harass, annoy or alarm another. *Commonwealth v. Battaglia*, 725 A.2d 192, 194 (Pa. Super. 1999). An intent to harass may be inferred from the totality of the circumstances. *Commonwealth v. Lutes*, 793 A.2d 949, 961 (Pa. Super. 2002).

For the reasons stated earlier in this opinion, we conclude that defendant's behavior and actions were instituted to annoy the Wagners. As such, the commonwealth has established the first element of the charge of harassment. Next, the commonwealth must prove that defendant engaged in a course of conduct or repeatedly committed acts which serve no legitimate purpose. "Course of conduct" is defined by statute as "a pattern of actions composed of more than one act over a period of time, however, short, evidencing a continuity of conduct." §2709(f). Our Superior Court has embraced the definition that "course of conduct is more than an isolated verbal or physical act. It is a pattern of conduct composed of same or similar acts repeated over a period of time, however short, which establishes a continuity of purpose in the mind of the actor." *Commonwealth v. Tedesco*, 550 A.2d 796, 799-800 (Pa. Super. 1988). Further, because "course of conduct" means a pattern of actions composed of more than one act over a period of time evidencing a continuity of conduct, a single act will not support a conviction. §2709(f); *Battaglia*, 725 A.2d at 194.

Here, Mr. Wagner testified that defendant has thrown wire and nails into their yard and has thrown nails into their driveway. Mr. Wagner also testified that defendant

has thrown dead fish rolled in newspaper and chicken bones onto their property. Defendant, moreover, testified to urinating on the Wagners' fence three or four times. The surveillance video also depicts defendant running into the fence with his lawn mower, hanging the no-trespass sign on the side of the fence facing the Wagners' property, and repeatedly entering upon the Wagners' property after the Wagners asked defendant to stay off their property. In addition, defendant placed his burning barrel in such close proximity to the Wagners' fence that he charred a portion of the fence. Such actions are enough to create a continuing course of conduct.

Whether or not such conduct falls under the harassment statute rests on whether defendant's conduct served no legitimate purpose. Conduct must be of a non-legitimate nature, i.e., not constitutionally protected. *Battaglia*, 725 A.2d at 194; *Commonwealth v. Miller*, 689 A.2d 238, 242 (Pa. Super. 1997).

Here, defendant's conduct served no legitimate purpose. We can find no legitimate purpose in throwing such things as nails, wire, dead fish or chicken bones onto the Wagners' property. Nor do we find any legitimate purpose to "defendant urinating on the Wagners' fence on a repeated basis, especially when he has been asked to refrain from entering the Wagners' property and defendant's house is nearby and equipped with indoor plumbing." We reach a similar conclusion with respect to defendant's repeated entry onto the Wagners' premises.

With respect to defendant's contention that he was legally on lot 43, that argument is devoid of merit. Defendant has acknowledged and we take judicial notice

of the equity action between the Wagners' predecessor in title, Terri Lynn Elder, and defendant docketed in this court at 2508 Civil 1996. That action involved an adverse possession claim by Terri Lynn Elder to a portion of lot 44. This court by the Honorable Peter J. O'Brien found that Ms. Elder had acquired a portion of lot 44 by adverse possession. Judge O'Brien, in granting Ms. Elder title to her portion of lot 44, specifically found that Ms. Elder was the owner of lot 43. Judge O'Brien's finding to this effect was never overturned on an appeal. The evidence at trial reveals that Ms. Elder later conveyed her interest in lot 43 and lot 44 to the Wagners. As such, any contention by defendant that he has an ownership or legal interest in the Wagners' property or that his conduct constitutes a legitimate purpose in that it serves to assert defendant's right to their property is devoid of all merit.

Accordingly, the commonwealth has established beyond a reasonable doubt that defendant's repeated conduct served no legitimate purpose. The commonwealth has further established that defendant intended for his conduct to annoy the Wagners. In accordance with the above findings, this court concludes that the commonwealth has proven beyond a reasonable doubt that defendant is guilty of harassment in violation of 18 Pa.C.S.A. §2709(a)(3).

While we are constrained to find defendant not guilty of the more serious charge of disorderly conduct and guilty only of the lesser charge of harassment, we are sensitive to the long running problems caused by defendant's persistent conduct with respect to the Wagners' property. Defendant's conduct has resulted in litigation in this court between the parties docketed at 280 Civil 2008. In that action, of which this court takes judicial notice, the

Wagners sued defendant for trespass seeking to enjoin defendant from entering upon their property, that being lot 43 and the Wagners' portion of lot 44. The Wagners' law suit also requests a declaratory judgment confirming the Wagners as the owners of lots 43 and their share of lot 44.

As part of the litigation in that action, the Wagners filed a motion for summary judgment, which was granted by the undersigned on January 6, 2011. Our January 6, 2011 order confirms the Wagners as the owners of lots 43 and part of lot 44 and enjoins defendant from entering upon their property. Our January 6, 2011 order also serves as further notice to defendant that he has no ownership or possessory right, legal or otherwise, in or to lot 43 or the Wagners' portion of lot 44. Any future encroachment upon the Wagners' property by defendant will likely result in the filing of additional and more serious criminal charges and/or contempt proceedings.

## CONCLUSIONS OF LAW

1. The commonwealth has failed to prove beyond a reasonable doubt that defendant is guilty of disorderly conduct.

2. The commonwealth has established beyond a reasonable doubt that defendant is guilty of harassment.

## VERDICT

And now, January 27, 2011, upon consideration of the evidence presented at the non-jury trial in the matter of the Commonwealth of Pennsylvania versus defendant, John Paul Klingel, this court finds as follows:

1. With regard to count I of the criminal information,

76

disorderly conduct (18 Pa.C.S.A. §5503(a)(4)), this court finds defendant not guilty;

2. With regard to count II of the criminal information, harassment (18 Pa.C.S.A. §2709(a)(3)), this court finds defendant guilty.

The defendant is directed to appear for sentencing on March 22, 2011, at 9:00 a.m. in courtroom No.6, Monroe County courthouse, Stroudsburg, Pennsylvania. The Monroe County Probation Office is directed to conduct a presentence investigation and submit a report to the court prior to sentencing. The status of bail is continued.